UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES L. ZUBILLAGA,<br><br>    Plaintiff,<br><br>v.<br><br>CHERYL R. BRANSFORD, individually, and as Trustee under the CHERYL R. BRANSFORD TRUST, dated November 7, 2014,<br><br>    Defendant. | Case No. 1:24-cv-00580-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff James Zubillaga's Motion for Summary Judgment (Dkt. 14) and Defendant Cheryl Bransford's Cross-Motion for Summary Judgment (Dkt. 21). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's cross-motion.

## BACKGROUND

This dispute arises out of a prior specific-performance lawsuit[1] concerning Zubillaga's right of first refusal to purchase approximately 675 acres of real property located at 269 McKenzie Creek Road, in White Bird, Idaho. The deed of first right of refusal required Zubillaga, if he elected

---

[1] *Zubillaga v. Bransford*, No. 3:22-CV-00216-AKB, 2023 WL 8529775 (D. Idaho Dec. 8, 2023).

**MEMORANDUM DECISION AND ORDER - 1**

to meet a third-party offer, to "complete the transaction in accordance with the terms of the earlier third party offer" (Dkt. 21 at 2). In the prior litigation, the Court entered judgment for Zubillaga "for specific performance of the agreement under the Deed of First Right of Refusal" (Dkt. 21-2 at 30).

The third-party offer Zubillaga was required to match was a March 1, 2022, RE-23 Commercial/Investment Real Estate Purchase and Sale Agreement (the "PSA") (Dkt. 21-2 at 17). After the Court ordered specific performance, the parties executed an Addendum to Purchase and Sale Agreement (Dkt. 21-2 at 9–11). The Addendum nominally provides that it was executed "in compliance with the Judgment"; "[a]ll the terms, conditions, and provisions in the Purchase and Sale Agreement [were] adopted by the Parties and incorporated by reference"; the Judgment remained "in full force and effect and unaltered"; and the Court retained jurisdiction to enforce the Judgment and resolve future disputes (Dkt. 21-2 at 9–10). The Addendum extended the due diligence deadline to thirty-five calendar days from execution of the Addendum, extended the closing deadline to May 31, 2024, and declared "TIME IS OF THE ESSENCE" (Dkt. 21-2 at 10).

Unless modified by the Addendum, the PSA's terms still control. Paragraph 18 of the PSA provides that "upon expiration of the Due Diligence Deadline, BUYER is purchasing the PROPERTY in as-is condition with all faults and with no further repairs required," unless otherwise agreed in writing (Dkt. 21-2 at 20). Paragraph 16 establishes a due diligence mechanism that requires the buyer to cancel or provide written notice of disapproved items and, if the parties do not agree in writing on resolving those items, permits cancellation; if the buyer does not cancel, the buyer is "conclusively" deemed to proceed without repairs or corrections except for any items the seller agreed in writing to repair or correct (Dkt. 21 at 4–5; Dkt. 21-2 at 19). Paragraph 10 provides that personal property and fixtures were included "as is" despite "prior publications

**MEMORANDUM DECISION AND ORDER - 2**

including but not limited to MLS listings and advertisements" (Dkt. 21-2 at 18), and Paragraph 22 provides that if the real property is materially damaged before closing, the agreement is voidable at the buyer's option (Dkt. 21 at 9; Dkt. 21-2 at 20). Finally, the PSA also provides it "may be modified only by a written agreement signed by each of the parties" (Dkt. 21-2 at 21).

One week before closing, on May 24, 2024, Zubillaga advised Bransford in writing that the property was "not in clean condition" and that "some of the appliances" had been removed; Zubillaga's summary judgment briefing characterizes those pre-closing complaints as including missing appliances and cabinets, removed kitchen countertops, and scrap metal and other personal property left in the residence and on the property (Dkt. 15-1 at 46; Dkt. 15 at 5–6). Bransford's counsel responded that the caretakers would sweep after vacating, scrap metal would be removed on May 29, and the property would be ready for follow-up inspection on May 30; counsel also stated, "[p]erhaps we should discuss early next week and work out a written list of items the Buyer seeks to address" (Dkt. 15-1 at 45). On May 28, Bransford's counsel wrote: "I was informed that the appliances will be replaced," and described other ongoing cleanup efforts (Dkt. 15-1 at 63).

On May 29, 2024, Zubillaga proposed an Escrow Agreement for Repair and Personal Property Removal Holdback under which the parties would "holdback from the Purchase Price in an amount equal to 150% of the estimated costs of repairs to the home's kitchens and the removal of the remaining personal property from the real property" (Dkt. 22-1 at 15). When Zubillaga requested that Bransford sign the proposed holdback agreement, however, no estimate had been obtained; Bransford thereafter did not agree to the holdback agreement; and on May 30, she invoked PSA paragraph 16(B)(3) as the written response to any disapproved repair items (Dkt. 22-1 at 14-15; Dkt. 21-2 at 40).

**MEMORANDUM DECISION AND ORDER - 3**

Zubillaga did not cancel the transaction; the parties closed the sale on May 31, 2024; and title was conveyed (Dkt. 1 at 3; Dkt. 4 at 3). Sometime after the May 30 follow-up inspection, Zubillaga obtained repair estimates totaling $41,936.66 (Dkt. 16 at 3; Dkt. 15 at 171-73). On September 16, Zubillaga sent a demand letter seeking $41,936.66 for "restoration of the property" (Dkt. 21-2 at 77–78). When the demand was not met, Zubillaga filed this action seeking those damages and lost rental income.

The Complaint characterizes the case as arising out of Defendant's alleged failure to comply with the parties' agreement and the Court's prior specific-performance judgment.[2] Zubillaga's Count One alleges the residence "was to be left in good and fit condition" as set forth in the contract and public advertising and seeks contract damages (Dkt. 1 at 2). Count Two seeks treble damages under Idaho Code § 6-202 based on alleged "waste" and damage to the real property (Dkt. 1 at 3–4; Dkt. 15 at 8).

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court's role at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). In considering a summary judgment motion, the court must view the facts in the

---

[2]      The Court disagrees that it retained any jurisdiction to enforce the parties' agreement or that this action is one to enforce the judgment. Further, the parties cannot impose jurisdiction on the Court by agreeing that the Court retained jurisdiction to enforce an agreement when it did not. Nonetheless, the Court has diversity jurisdiction in this case based on Zubillaga's allegations.

MEMORANDUM DECISION AND ORDER - 4

non-moving party's favor. *Id*. To defeat a summary judgment motion, the respondent need only present evidence upon which a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor. *Id*.

Where parties file cross-motions for summary judgment on the same issue, the court must consider both motions and all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Each motion must be considered on its own merits. *Id.* Even if both parties assert no genuine disputes of material fact exist, the court must still review the record and determine if disputes of material fact exist. *Id.*

When interpreting a contract, a court begins with the document's language. *Potlatch Educ. Ass'n v. Potlatch School Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010). Absent an ambiguity, the contract must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument. *Id*. When a contract's language is clear and unambiguous, its interpretation is a question of law. *Huber v. Lightforce USA, Inc*., 367 P.3d 228, 245 (Idaho 2016); *Doyle v. Ortega*, 872 P.2d 721, 724 (Idaho 1994). "A court must look to the contract as a whole and give effect to every part thereof." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2012).

## ANALYSIS

The Court's analysis proceeds from a convoluted summary judgment record. Zubillaga moved for summary judgment on August 4, 2025 (Dkt. 14), supported by his memorandum, affidavit, and statement of uncontested facts (Dkts. 15–17). Bransford then filed a response and cross-motion for summary judgment on August 25. Although memoranda were initially docketed separately (Dkts. 19, 20), the operative defense filing is Dkt. 21, together with Bransford's statement of material facts and her declaration (Dkts. 21-1, 21-2). Zubillaga thereafter filed his

MEMORANDUM DECISION AND ORDER - 5

response to Bransford's cross-motion, supporting affidavit, and statement of disputed facts (Dkts. 22, 23, and 24). Because both parties seek summary judgment, the Court considers each motion on its own merits and views the facts and reasonable inferences in favor of the nonmovant as to that motion.

## A.      Count One Is Barred by the PSA

Zubillaga alleges breach of the PSA and Addendum. Specifically, he alleges that, as a material term of the sale, the property and its improvements were to be left in "good and fit condition," and that after closing he discovered the residence had been damaged and stripped of appliances and other improvements on or before closing, allegedly, "in violation of the parties' contract and Judgment" (Dkt. 1 at 2–3). The complaint seeks contract damages on that theory, including repair costs and lost rental income caused by the allegedly uninhabitable condition of the residence (Dkt. 1 at 3). In opposing Bransford's cross-motion, Zubillaga frames Count One as a claim that Bransford made and breached pre-closing commitments to repair and restore the residence and that closing did not waive those asserted obligations (Dkt. 22 at 2–6).

The Court recognizes that the purchase and sale occurred only after the Court ordered it. But the prior judgment did not create a new bargain or new property-condition obligations apart from the third-party offer Zubillaga elected to match. Rather, the Court held that once Zubillaga timely exercised his right of first refusal, "an enforceable contract arose between Bransford and Zubillaga for the sale of the 675 acres according to the terms and conditions of the [PSA]." *Zubillaga v. Bransford*, No. 3:22-CV-00216-AKB, 2023 WL 8529775, at *5 (D. Idaho Dec. 8, 2023). The Addendum did not displace that framework; it adopted and amended certain terms of the PSA, set new due-diligence and closing dates, and expressly provided that all other provisions

**MEMORANDUM DECISION AND ORDER - 6**

of the PSA remained unmodified. In short, the prior order enforced the PSA as written, and the Addendum did not rewrite the parties' bargain over property condition, objections, and remedies.

Under the PSA, Zubillaga had the right to identify disapproved items, attempt to reach a written resolution, and absent such agreement, cancel the transaction; if he instead proceeded, then the PSA instructs he "shall conclusively be deemed to have elected to proceed with the transaction *without repairs or corrections*" unless in writing (Dkt. 21 at 4–5; Dkt. 21-2 at 19) (emphasis added). And if he proceeded with closing, then he purchased the property "in as-is condition with all faults and with no further repairs required," unless otherwise agreed in writing (Dkt. 21-2 at 20). Paragraph 22 separately gave Zubillaga the option to void the agreement if the property had been materially damaged before closing (Dkt. 21 at 9; Dkt. 21-2 at 20).

The summary judgment record shows that Zubillaga raised written objections to the property condition before closing (Dkt. 15-1 at 46). Bransford's counsel responded regarding personal property and suggested creating a written list of requested repairs (Dkt. 15-1 at 45). On May 28, 2024, Bransford's counsel wrote: "I was informed that the appliances will be replaced," and described ongoing cleanup efforts (Dkt. 22-1 at 8). The next day, Zubillaga proposed a written holdback agreement (Dkt. 22-1 at 15-16). On May 30, Bransford refused to sign that agreement and invoked PSA paragraph 16(B)(3) as her written response to any disapproved items (Dkt. 21-2 at 40). Zubillaga then proceeded to close without repairs being made (Dkt. 1 at 3; Dkt. 4 at 3). That sequence governs the present dispute.

Zubillaga's strongest evidence is the May 28 email stating that "the appliances will be replaced" (Dkt. 22-1 at 8). On summary judgment, the Court must credit that statement and draw reasonable inferences in Zubillaga's favor. Even so, no reasonable factfinder could conclude from that email, the related communications, and the holdback proposal that the parties had reached a

MEMORANDUM DECISION AND ORDER - 7

completed enforceable written agreement to repair under the PSA. Although the May 28 email may support an inference that the parties had reached some understanding concerning certain appliances, it does not resolve the scope of all disputed items, the timing of performance, the full remedy for the damage Zubillaga identified, or the parties' final obligations if repairs were not completed before closing.

The holdback proposal confirms that point. Zubillaga did not treat the matter as finally resolved. Instead, he proposed a new written arrangement addressing both repairs and security for performance (Dkt. 22-1 at 15-20) (identifying appliances as an issue to address). And even if the May 28 email, for purposes of summary judgment only, is viewed as an agreement that appliances would be replaced, Zubillaga knew at least some alleged condition issues remained unresolved before closing; Bransford refused the holdback agreement; and Zubillaga nevertheless proceeded to close (Dkt. 22-1 at 14-20; Dkt. 1 at 3; Dkt. 4 at 3). Thus, even on Zubillaga's version of the facts, the parties had not reached the kind of completed written resolution the PSA requires before the buyer elects to close.

Moreover, the PSA provides that it "may be modified only by a written agreement signed by each of the parties" (Dkt. 21-2 at 21). The email exchanges between counsel were not a signed written agreement by both the buyer and seller. That distinguishes *Steiner v. Ziegler Tamura, Co.*, 61 P.3d 595 (Idaho 2002). There, the operative addendum to the purchase agreement contained the cleanup and approval language on which the buyer relied, and the Idaho Supreme Court treated that language as part of the parties' contract. *Id*. at 599–600. Here, by contrast, the operative writings preserved the PSA's due-diligence framework, cancellation option, "as-is" allocation, and signed-writing rule, and the later email exchanges never ripened into an executed repair addendum or other signed written modification. *Steiner* therefore does not describe the record before the

MEMORANDUM DECISION AND ORDER - 8

Court. The same is true of Zubillaga's argument that an agreement had been reached on repair, though not on the funding for repair; there is no signed written agreement to that effect.

The Court recognizes Zubillaga's broader contextual argument. This dispute was not a routine pre-closing inspection dispute. In Zubillaga's view, Bransford's alleged conduct forced him to choose between abandoning a court-ordered transaction and closing despite apparent intentional damage to the residential component. That practical concern is evident from the record.

But that context does not alter what the prior order required or what the Addendum preserved. The specific-performance judgment enforced Zubillaga's right to purchase on the existing PSA terms; it did not rewrite the PSA's allocation of pre-closing property-condition risk or create an extra-contractual repair remedy. *Zubillaga*, 2023 WL 8529775, at *5. The Addendum likewise left the PSA's operative remedial structure in place. Thus, once Zubillaga identified disapproved items, the contract provided the same specific choices: obtain a written resolution, void the transaction if the property had been materially damaged before closing, or proceed to closing and be deemed to accept the transaction absent the writings the PSA requires (Dkt. 21-2 at 19-21). The Court may not alter that contractual allocation after the fact.

Nor can Zubillaga avoid that result through an implied-covenant theory. Idaho law does not permit the implied covenant of good faith and fair dealing to contradict express contractual terms or impose obligations inconsistent with the allocation of rights and remedies to which the parties agreed. *See Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 863 (Idaho 1991). Here, the PSA specifically addresses inspection, objection, written resolution, cancellation, as-is acceptance, and pre-closing damage; the addendum incorporated the same and put a timeline in place. The implied covenant cannot be used to change these express terms of the agreement.

**MEMORANDUM DECISION AND ORDER - 9**

In short, the parties do not dispute that title transferred at closing on May 31, 2024, and Zubillaga's theory is that the damage and removals occurred "on or before" that closing and transfer of title. Even viewing the May 28 email in the light most favorable to Zubillaga, he knew before closing whether any promised remedial performance had been completed and that Bransford refused the proposed holdback arrangement. He nevertheless elected to proceed and accept title rather than cancel or invoke the PSA's other remedies. On this record, Zubillaga's breach of contract claim fails. Accordingly, Bransford is entitled to summary judgment on Zubillaga's Count One.

## B.    Count Two Fails as a Matter of Law

Count Two adds little to Count One as a pleading matter. It incorporates the preceding factual allegations by reference and then pleads, in a single substantive paragraph, a claim for treble damages under Idaho Code § 6-202 based on alleged civil trespass to, and waste upon, the improvements to the property (Dkt. 1 at 3–4). At summary judgment, Zubillaga clarifies that theory by arguing Bransford committed "waste to Zubillaga's property" when she intentionally damaged the residence and failed to deliver it in the promised condition (Dkt. 15 at 8). But even framed that way, Zubillaga does not identify evidence of an unauthorized entry onto property belonging to him after he acquired title or possession. Rather, his statutory claim rests on the same alleged pre-closing damage and removal of fixtures that underlie Count One, including allegations that HVAC units, copper piping, and other items were removed shortly before closing (Dkt. 15 at 8; Dkt. 23 at 4).

In Idaho, "[a]ny person who enters or remains upon the real property of another person without permission commits a civil trespass." I.C. § 6-202. Bransford argues there is no evidence

of post-closing entry "upon the real property of another"; Bransford attests she has not been on the property since closing (Dkt. 21 at 10; Dkt. 21-2 at 5).

First, to the extent Count Two is premised on a post-closing unauthorized-entry theory, Zubillaga points to no evidence that Bransford entered or remained on the property after May 31, 2024, and Bransford's declaration is to the contrary (Dkt. 21-2 at 5). On the record presented, Zubillaga has not shown a triable issue as to any post-closing trespassory conduct.

Second, Zubillaga's own pleadings and evidence place the alleged destruction and removal "on or before the closing of the real estate sale," that is, before Zubillaga acquired title and possession (Dkt. 1 at 3; Dkt. 4 at 3; Dkt. 16 at 2-3). Zubillaga does not contend he held title or possession before closing, and he develops no theory under which the pre-closing rights recognized in the specific-performance lawsuit created property rights which could be trespassed upon before the sale closed. In short, construing the facts most favorably in Zubillaga's favor, the alleged trespassory conduct occurred before he owned the property.

That mismatch between the alleged bad conduct and the claim alleged resolves Count Two. The Court is not holding that every dispute arising from a court-ordered sale must sound only in contract or that there was no remedy available to Zubillaga. It is holding only that the statutory tort Zubillaga actually alleged does not survive summary judgment on this record. Because Zubillaga alleges the relevant damage and removals occurred before he acquired title or possession, and because he identifies no evidence of post-closing unauthorized entry, Count Two fails as a matter of law. Accordingly, Bransford is entitled to summary judgment on Zubillaga's Count Two.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Dkt. 14) is **DENIED**.

**MEMORANDUM DECISION AND ORDER - 11**

2.  Defendant's Cross-Motion for Summary Judgment (Dkt. 21) is **GRANTED**.

3.  Judgment shall be entered in favor of Defendant and against Plaintiff on all claims.

4.  The Clerk of Court is directed to enter judgment and close this case.

DATED: March 23, 2026

*Amanda K. Brailsford*

**Amanda K. Brailsford**
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 12